**NOT FOR PUBLICATION**

**Order Filed on July 20, 2017 by
Clerk, U.S. Bankruptcy Court -
District of New Jersey**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Vincent I. Olsen | Case Number:  14-11273<br><br>CHAPTER 7 |
| Nancy Isaacson, Chapter 7 Trustee,<br><br>                     Plaintiff(s)<br><br>v.<br><br>Marcy S. Greenwald,<br><br>                     Defendant(s) | Adv. Pro. Number: 15-01877 |

**OPINION**

**A P P E A R A N C E S :**

Greenbaum, Rowe, Smith & Davis LLP
Thomas A. Waldman, Esq.
75 Livingston Avenue, Suite 301
Roseland, New Jersey 07068-3701
*Counsel for Nancy Isaacson, Chapter 7 Trustee*

Romanowsky Law
Brian D. Romanowsky, Esq.
64 Maple Avenue
Morristown, NJ 07960-5273
*Counsel for Marcy S. Greenwald*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Before the Court is plaintiff/Chapter 7 Trustee Nancy Isaacson's ("**Trustee**") motion for summary judgment ("**Trustee's Motion**") on her complaint seeking authorization to sell both the bankruptcy estate's interest in the subject real property and the interest of defendant Marcy Greenwald ("**Greenwald**"), the co-owner and the debtor's ex-wife, pursuant to 11 U.S.C. § 363(h).

Greenwald also filed a motion for summary judgment ("**Greenwald's Motion**") seeking to dismiss the Trustee's complaint. Greenwald asserts that the debtor, and therefore the Trustee, has no interest in the sale proceeds of the subject property under a divorce settlement agreement.

The Court held a hearing on both motions on October 4, 2016. At the end of the hearing, the Court directed the parties to submit additional documents to clarify the nature of a potentially dispositive 2007 refinancing transaction between the debtor, Vincent I. Olsen ("**Debtor**"), Greenwald and Bank of America, N.A. ("**Bank of America**"). The parties submitted supplemental documentation and briefing in November 2016.

Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law. To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent any conclusions of law might constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended September 18, 2012. This matter constitutes a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper under 28 U.S.C. § 1408.

## BACKGROUND

### A. The Facts

The following facts are undisputed based on the parties' respective statements of facts:

- Debtor and Greenwald were previously married.  They divorced in 2003.  (Adv. Pro. No. 15-01877 (hereafter referred to as "**Adv. Pro.**"), Docket No. 29, ¶1; Docket No. 27-17, ¶13; Docket No. 37, ¶13).

- The real property located at 8 Adina Terrace, Montville, New Jersey (the "**Property**") is a single-family residential townhouse condominium.  The parties agree partition in kind is impracticable.  (Adv. Pro., Docket No. 27-17, ¶10; Docket No. 37, ¶10).

- The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.  (Adv. Pro., Docket No. 27-17, ¶12; Docket No. 37, ¶12).

- The state court judgment of divorce incorporated the terms of Debtor's and Greenwald's divorce settlement agreement (the "**Settlement Agreement**") by reference.  (Adv. Pro., Docket No. 27-17, ¶13; Docket No. 37, ¶13).

- The Settlement Agreement sets forth certain provisions regarding the Property.  (*See* Adv. Pro., Docket No. 27-17, ¶14; Docket No. 37, ¶14).  The parties do not dispute the language of the Settlement Agreement, which provides, in pertinent part:

    MARITAL HOME

    17.    The parties are the owners of premises located at 8 Adina Terrace, in Montville, New Jersey.

    18.    Wife shall have the sole and exclusive right to possession of the marital home until their daughter graduates college or her emancipation, whichever occurs first.  At this time, Wife shall have the option to purchase Husband's interest in the property, which is defined as one-half of the value of the property at that time based upon a mutually agreed upon appraisal, which cost shall be equally divided between the parties; or the property shall be sold and the net proceeds, after all reasonable closing costs are deducted, shall be equally divided between the parties; or the parties can mutually agree in writing to allow Wife to remain in the property.

    19.    There is currently a home equity line on the home, with an outstanding balance of $130,000.  Husband agrees to be solely responsible

>  for this loan in exchange for Wife waiving $65,000 of her interest in husband's 401K Plan, as set forth below.  Thus, if Wife purchases Husband's interest in this property or the property is sold, from Husband's share of the proceeds, he shall immediately satisfy this loan if it is still outstanding and provide Wife with proof of same within thirty (30) days.  In determining Wife's share of the equity in this property, this loan shall not be deducted since it was already deducted from her interest in Husband's 401K Plan, as set forth below.  Husband shall indemnify and hold Wife harmless as to any and all liability arising from this home equity line.  In the event Husband defaults on the home equity line, then he shall immediately satisfy same to avoid foreclosure on the property.
>
>  20. Until the marital home is sold, Wife shall be responsible for the payment of all ordinary carrying costs and maintenance on the with [*sic*] marital home, except the home equity line, as set forth above, and major repairs (defined as $1,000 or more) to the property which are necessary to preserve the equity in the property.  The costs of these repairs shall be divided equally between the parties.

(*See* Adv. Pro., Docket No. 27-14, ¶¶17-20) (errors in original).

- Greenwald continues to live in the Property.  (Adv. Pro., Docket No. 27-17, ¶15; Docket No. 37, ¶15).

- Debtor's and Greenwald's daughter lives with Greenwald in the Property.  (Adv. Pro., Docket No. 29, ¶3; Docket No. 34, ¶1).

- Debtor's and Greenwald's daughter is emancipated and not a co-owner of the Property.  (Adv. Pro., Docket No. 27-17, ¶22; Docket No. 37, ¶22).

- In 2007, with Greenwald's consent, Debtor refinanced the home equity loan referenced in the Settlement Agreement with a new loan in a greater amount (the "**2007 Transaction**").  (Adv. Pro., Docket No. 27-17, ¶19; Docket No. 37, ¶19).

- The new home equity loan is the indebtedness disclosed on Debtor's petition and is secured by the mortgage lien against the Property in the approximate amount of $209,770.31.  (Adv. Pro., Docket No. 27-17, ¶19; Docket No. 37, ¶19).

- The $209,770.31 mortgage lien is one of several liens against the Property, including an additional mortgage lien in the approximate amount of $25,644.54 as of July 8, 2016, and a $27,700.32 real estate tax lien.  (Adv. Pro., Docket No. 27-17, ¶4; Docket No. 37, ¶4).

- Post-petition, Debtor transferred a deed to the Property to Greenwald.  (Adv. Pro., Docket No. 27-17, ¶4; Docket No. 37, ¶4).

- Following the Trustee's demand that the post-petition transfer be avoided, the parties submitted and the Court entered a Consent Order avoiding the transfer. The Consent Order was subsequently recorded. (Adv. Pro., Docket No. 27-17, ¶5; Docket No. 37, ¶5).

Although not explicitly agreed to in the parties' statements of facts, the following facts also appear undisputed:

- Debtor and Greenwald were co-owners of the Property as of the petition date. (Adv. Pro., Docket No. 27-17, ¶1; Docket No. 36 at 3).

- The Trustee contends, and Greenwald does not dispute, that Greenwald and Debtor never amended the Settlement Agreement in writing. (Adv. Pro., Docket No. 40-8 at 4).

- Greenwald and the Trustee appear to agree that the Property may be worth approximately $355,000 based on a June 3, 2016 appraisal prepared at Greenwald's request, though the Trustee suggests the current value may be higher. (*See* Adv. Pro., Docket No. 27-1, ¶11; Docket No. 30-1, ¶¶11, 14).

- Upon sale of the Property, Greenwald will receive a share of the proceeds, if any. (*See* Adv. Pro., Docket No. 27-17, ¶9; Docket No. 37, ¶¶9-11).

- The Trustee contends Debtor used the proceeds from the 2007 Transaction to pay off the home equity loan referenced in the Settlement Agreement. (Adv. Pro., Docket No. 40-8 at 4; Docket No. 41 at 20). Although Greenwald did not explicitly concede this point, she admitted the 2007 Transaction was a "refinancing of the $130,000 debt referenced in the Judgment" and submitted copies of the loan documents related thereto, which indicate that the proceeds of the new loan were to be used to pay off the prior home equity loan. (*See* Adv. Pro., Docket No. 41, ¶2; Docket No. 41 at 7).

**B. Debtor's Bankruptcy Case**

On January 25, 2014, Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. Schedule A of the petition indicates that Debtor holds an interest in the Property, described as "ex-wife's house." (Case No. 14-11273 (hereafter referred to as "**Main Case**"), Docket No. 1). Schedule D reflects that Bank of America holds a secured claim against the Property in the amount of $198,837.00 (as of the petition date), described as a "REVOLVING ACCOUNT OPENED 3/2007." (Main Case, Docket No. 1). Schedule E reflects that Greenwald holds an unsecured priority claim in an "unknown" amount. (Main Case, Docket No. 1).

5

On April 27, 2015, the Trustee filed an adversary Complaint against Greenwald. (Adv. Pro., Docket No. 1). The Complaint alleges one count seeking a declaratory judgment authorizing the Trustee to market and sell both the bankruptcy estate's interest and Greenwald's co-owner interest in the Property under section 363(h). (Adv. Pro., Docket No. 1, Count One).

On July 8, 2015, Greenwald filed an Answer to the Complaint. (Adv. Pro., Docket No. 4). Greenwald contends, *inter alia*, that the Settlement Agreement specifically transferred equity otherwise belonging to Debtor to Greenwald and the Trustee therefore has no interest in the Property. (Adv. Pro., Docket No. 4, ¶¶16, 18).

### C. The Trustee's and Greenwald's Respective Summary Judgment Motions

On July 28, 2016, the Trustee and Greenwald each filed motions for summary judgment with supporting documents. (*See* Adv. Pro., Docket Nos. 27-31). The Trustee argued that as a contract, the Settlement Agreement can only impose personal obligations on the parties; therefore, Debtor's obligations to Greenwald in the Settlement Agreement are personal to Debtor and do not affect the estate's interest in the Property. (Adv. Pro., Docket No. 27-1, ¶23). The Trustee contended Greenwald may have general unsecured claims against Debtor personally for any failure to meet his obligations to her with respect to the mortgage referenced in the Settlement Agreement, which may or may not be non-dischargeable. (Adv. Pro., Docket No. 27-1, ¶24). The Trustee asserted, however, that such claim is against Debtor, not his estate, and cannot effect a transfer of Debtor's interest in the Property. (Adv. Pro., Docket No. 27-1, ¶¶23-24). The Trustee further argued that there is substantial equity in the Property to be realized by a sale and shared between Debtor's estate and Greenwald. (Adv. Pro., Docket No. 27-1, ¶13). The Trustee added that Greenwald failed to establish any detriment to herself that would result from the sale of the Property. (Adv. Pro., Docket No. 27-1, ¶¶25-27).

Greenwald, on the other hand, argued that Debtor is not entitled to 50% of the sale proceeds from the Property under the Settlement Agreement. (Adv. Pro., Docket No. 31 at 4). Specifically, Greenwald contended that because she waived her right to $65,000 from Debtor's 401(k) plan, the full amount of the mortgage referenced in the Settlement Agreement must be satisfied from Debtor's "equity" from the sale of the Property. (Adv. Pro., Docket No. 31 at 3, 9). Greenwald further alleged that she has no money and lives in the Property with her daughter who is "disabled," "suffers from severe mental issues," and would be harmed if forced to move from the Property. (Adv. Pro., Docket No. 31 at 3-4).

In the alternative, Greenwald asked the Court to impose a constructive trust on Debtor's interest in the Property to prevent his unjust enrichment at her expense. (Adv. Pro., Docket No. 31 at 10-11). Greenwald also asserted that the Trustee's "strong arm" powers under section 544 do not apply and that the Settlement Agreement is not an executory contract that the Trustee can reject. (Adv. Pro., Docket No. 31 at 10-13).

On September 27, 2016, the Trustee filed a response to Greenwald's statement of facts and a memorandum of law in opposition to Greenwald's Motion and in further support of the Trustee's Motion. (Adv. Pro., Docket Nos. 34, 35). The Trustee urged the Court to reject Greenwald's assertion that the Settlement Agreement altered Debtor's and Greenwald's respective 50% ownership interests in the Property. (Adv. Pro., Docket No. 35 at 2). The Trustee further argued that assuming a valuation of $355,000, Greenwald would receive over $35,000.00 in net proceeds, which is sufficient to pay for alternative housing. (Adv. Pro., Docket No. 35 at 9). Finally, the Trustee asserted that possible detriment to Greenwald's emancipated, adult daughter, though sad, is not legally relevant under section 363(h). (Adv. Pro., Docket No. 35 at 10).

Also on September 27, 2016, Greenwald filed a letter brief in opposition to the Trustee's Motion (which was re-filed on the docket on September 28, 2016) and a response to the Trustee's statement of facts. (Adv. Pro., Docket Nos. 36-38). Greenwald argued that the Settlement Agreement was reduced to a judgment that can affect the rights of third parties, including the Trustee. (Adv. Pro., Docket No. 36 at 1-2). Greenwald contended that although the parties are equal owners of the Property, the Judgment of Divorce and Settlement mandate that Debtor's share of the proceeds of the Property's sale be reduced by the Bank of America mortgage. (Adv. Pro., Docket No. 36 at 3-5). Greenwald argued in the alternative that the benefit to the estate of a sale does not sufficiently outweigh the detriment to her and her daughter. (Adv. Pro., Docket No. 36 at 5).

**D. The October 4, 2016 Hearing**

On October 4, 2016, the Court held a hearing on both summary judgment motions. Based on the parties' oral argument, it became apparent to the Court the crux of the parties' dispute was their conflicting interpretations of paragraphs 18 and 19 of the Settlement Agreement. Specifically, the Trustee asserted that the subject paragraphs should be interpreted such that Debtor's responsibility to satisfy the referenced home equity loan is a personal obligation that runs from Debtor to Greenwald. Therefore, the Trustee argued, the Trustee is not and cannot be bound by the Settlement Agreement with respect to Debtor's personal obligations. On the other hand, Greenwald asserted that the Trustee succeeded to Debtor's obligations for the referenced home equity loan under the Settlement Agreement. Greenwald argued that the home equity loan must be satisfied exclusively from the sale proceeds derived from Debtor's pre-petition interest in the Property.

During the hearing, the Court inquired whether the 2007 Transaction, which both parties described as a refinancing of the home equity loan that existed at the time of the Settlement Agreement, was a separate and new loan obligation or a modification of the pre-existing loan obligation. The Court expressed that if the 2007 Transaction was indeed a new loan with a new agreement, then the dispute over the interpretation of the subject paragraphs of the Settlement Agreement would be moot since those paragraphs referred to the pre-existing obligation.

It became apparent during the hearing that neither the Trustee nor Greenwald understood the nature and/or structure of the 2007 Transaction, and could not speak to its significance in the present matter. The Court reserved and directed the parties to obtain and submit documents pertaining to the 2007 Transaction.

### E. The Parties' Supplemental Briefing on the 2007 Transaction

On November 4, 2016, the Trustee filed supplemental briefing and documents in further support of the Trustee's Motion and in further opposition to Greenwald's Motion. (Adv. Pro., Docket No. 40). The Trustee argues that post-hearing documents from Bank of America and from Greenwald show that the 2007 Transaction did not merely increase the credit limit of the home equity loan referred to in the Settlement Agreement. Instead, the Trustee contends that Debtor incurred a new debt, used the proceeds to pay off the existing Bank of America home equity loan referred to in the Settlement Agreement, and then Debtor and Greenwald gave Bank of America a new mortgage on the Property to secure the new loan. (Adv. Pro., Docket No. 40-8 at 3-4). Based on the foregoing, the Trustee asserts that any dispute about paragraph 19 of the Settlement Agreement is moot because Debtor satisfied his obligation to pay off the home equity loan referenced in the Settlement Agreement, which was never modified in writing, and therefore Greenwald received the benefit of her bargain. (Adv. Pro., Docket No. 40-8 at 4).

9

On the same date, Greenwald filed a supplemental letter in further support of her motion. (Adv. Pro, Docket No. 41). Greenwald argues that because Debtor refinanced the debt on the home equity loan referenced in the Settlement Agreement instead of paying it off with independent funds, he did not "satisfy" that obligation. (Adv. Pro., Docket No. 41 at 1). Greenwald contends that the original debt not only survived, but was increased. (Adv. Pro., Docket No. 41 at 1-2). Therefore, she continues, the "purpose" of the judgment of divorce and the Settlement Agreement is not "resolved" and she has not received the benefit of her bargain. (Adv. Pro., Docket No. 41 at 1). Greenwald also asserts she consented to the 2007 Transaction on the condition that Debtor would pay the increased debt from his share of the sale proceeds. (Adv. Pro., Docket No. 41 at 1). Greenwald argues that the judgment of divorce and certain 2012 and 2013 communications between Debtor's and Greenwald's respective counsel further support her position. (Docket No. 41 at 2-3).

**DISCUSSION**

As the Court expressed during the hearing, if the 2007 Transaction was a new loan with a new agreement, then the parties' dispute over the interpretation of the subject paragraphs of the Settlement Agreement, which refer to the then-existing home equity loan, are moot. Therefore, the Court will first analyze the nature of the 2007 Transaction and whether there is any basis to find that the Settlement Agreement applies to it.

**A. Summary Judgment**

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides for entry of summary judgment where "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). "A fact is material when its resolution 'might affect the outcome of the suit under governing law . . . .'" *Justofin v. Metro. Life Ins.*, 372 F.3d 517, 521 (3d Cir. 2004). An issue of material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). The court must construe facts and inferences in a light most favorable to the non-moving party. *Sauers v. Sauers*, No. 14–01307 (DHS), 2014 WL 4771857, at *3 (Bankr. D.N.J. Sept. 23, 2014) (Steckroth, J.). The Court can only consider evidence that would be admissible at trial. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989). Thus, "evidence whose foundation is deficient must be excluded from consideration." *Id*.

The moving party bears the burden to make an initial showing that there is no genuine issue of material fact. *Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp.*, 477 U.S. at 323). The burden then shifts to the non-moving party to establish the existence of doubt as to the material facts. *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *Id*. at 248. To this end, irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Id*. Moreover, the non-movant may not rely on mere allegations, but must present actual evidence raising a genuine dispute of material fact. *Id.* at 249.

The material facts in this case are undisputed. Although Greenwald raises several issues, this Court finds they do not preclude summary judgment. For instance, Greenwald contends that the Settlement Agreement changed her and Debtor's respective interests in the Property or the proceeds from a sale of the Property. However, this is a legal question, not a question of fact.

Also, Greenwald fails to create a genuine issue of fact with respect to any hardship she would encounter by having to move from the Property. It is undisputed that if she received proceeds from the sale of the Property, she could use those proceeds to find alternative housing. She may not rely on mere allegations, unsupported by evidence, that she is experiencing financial difficulties and that the detriment to her if the Trustee sells the Property will outweigh any benefit to the estate. *See Anderson*, 477 U.S. at 249; (Adv. Pro., Docket No. 34, ¶¶11-12, 14).

Likewise, Greenwald's assertions about potential hardships her daughter may face if the Property is sold fail to create a genuine dispute of material fact. (*See* Adv. Pro., Docket No. 34, ¶13). Though this Court is sympathetic, section 363(h) requires it to balance the benefit to the estate from the sale against the detriment "to such co-owners." 11 U.S.C. § 363(h). It is undisputed that the daughter is not a co-owner of the Property. Crucially, Greenwald fails to even allege how potential hardships to her daughter, who is emancipated, detrimentally impact Greenwald. *See Anderson*, 477 U.S. at 249. This falls well short of the burden required to show a genuine dispute of material fact. Based on the foregoing, there are no outstanding issues of material fact and this matter is ripe for summary judgment.

**B. Sale of Property Pursuant to 11 U.S.C. § 363(h)**

　　*1. Standard*

The trustee may sell property of the estate other than in the ordinary course of business after notice and a hearing pursuant to section 363(b)(1) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1).

Although the Bankruptcy Code gives no further guidance on when a sale of assets can be approved (other than requiring notice and a hearing), the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) interpreted section 363(b) to require a finding by the bankruptcy court that the purchaser of a debtor's assets is a good faith buyer. The Third Circuit construed the "good faith buyer" standard to mean one who purchases in "good faith" and for "value." *Id* at 147. The *Abbotts Dairies* court compared a Section 363(b) purchaser to a buyer at a judicial sale:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). The Third Circuit further noted that "courts have held that '[f]air and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets.'" *Abbotts Dairies*, 788 F.2d at 149 (quoting *Rock Indus.*, 572 F.2d at 1197 n.1).

The Third Circuit appears to have adopted the "sound business purpose" test articulated in *Official Committee of Unsecured Creditors v. Lionel Corp.*, 722 F.2d 1063, 1067 (2d Cir. 1983) when examining the reason for an asset sale. *See In re Grand Prix Assocs. Inc.*, No. 09-16545 (DHS), 2009 WL 1850966, at *4 (Bankr. D.N.J. June 26, 2009) (Steckroth, J.). In *Lionel Corp.*, the Second Circuit held:

> [t]here must be some articulated business justification . . . for using, selling, or leasing property outside of the ordinary course of business before the bankruptcy judge may order such disposition under [s]ection 363(b) . . . The rule we adopt requires that a judge determining a [section] 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.

722 F.2d at 1070-71.

Section 363(h) provides that the trustee may sell both the estate's interest under subsection (b) and the interest of any co-owner in property in which the debtor had, when the case commenced, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). The key requirement is that the debtor have "an undivided interest as a tenant in common, joint tenant, or tenant by the entirety" as of the petition date. *In re Stewart*, 368 B.R. 445, 449 (Bankr. E.D. Pa. 2007).

> 2. *Debtor's 50% Interest in the Property and its Proceeds Under the Settlement Agreement Became Property of the Estate as of the Petition Date*

Section 541(a) provides "all legal or equitable interests" of the debtor become part of the bankruptcy estate upon the commencement of a bankruptcy case. 11 U.S.C. § 541(a). Thus, a debtor's interest in property that is jointly owned with a non-debtor spouse becomes property of the bankruptcy estate upon the filing of a bankruptcy petition. *In re Becker*, 136 B.R. 113, 115 (Bankr. D.N.J. 1992) (Stripp, J.).

The Court finds that there is no genuine dispute regarding the parties' respective ownership interests in the Property. Paragraph 18 of the Settlement Agreement explicitly states that Debtor held a 50% interest in the Property. (*See* Adv. Pro., Docket No. 27-14, ¶18) (defining "husband's interest in the Property" as "one-half the value of the Property at the time based upon a mutually

14

agreed upon appraisal"). Although Greenwald argues that the outstanding home equity loan somehow triggers provisions in paragraph 19 of the Settlement Agreement to either: (1) effect a transfer of Debtor's interest in the Property, or (2) require Debtor to satisfy the outstanding home equity loan from his share of the proceeds of the sale of the Property (Greenwald appears to argue both positions in her submissions), there is no basis to conclude that the Settlement Agreement applies to the outstanding home equity loan at all.

First, it is undisputed that Debtor refinanced the home equity loan referenced in the Settlement Agreement in the 2007 Transaction. When a borrower refinances his mortgage, he pays off his old debt with a new loan. *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 600 (3d Cir. 2017); *see* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "refinancing" as "[a]n exchange of an old debt for a new debt, as by negotiating a different interest rate or term or by repaying the existing loan with money acquired from a new loan"). Thus, the Court rejects Greenwald's argument that the obligation on the home equity loan referenced in the Settlement Agreement was not satisfied.

Second, there is no basis to extend the Settlement Agreement to the new home equity loan. The Settlement Agreement is at its essence, a contract. Contracts should be construed according to the plain and ordinary meaning of their terms. *Mollo v. Passaic Valley Sewerage Comm'rs*, No. CIV. 07-1655 DRD, 2009 WL 5216976, at *16 (D.N.J. Dec. 30, 2009), *aff'd*, 406 F. App'x 664 (3d Cir. 2011) (citing *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 364 (3d Cir. 2004)). The Court must give force to the intent of the parties by interpreting the contract according to the plain meaning of its terms. *Mollo*, 2009 WL 5216976 at *16.

Paragraph 19 of the Settlement Agreement repeatedly uses language referring to a loan existing at the time of the agreement. For example, it states:

15

> There is *currently a home equity line* on the home, with an outstanding balance of $130,000. Husband agrees to be solely responsible for *this loan* in exchange for Wife waiving $65,000 of her interest in husband's 401K Plan, as set forth below. Thus, if Wife purchases Husband's interest in this property or the property is sold, from Husband's share of the proceeds, he shall immediately satisfy *this loan* if it is still outstanding and provide Wife with proof of same within thirty (30) days. In determining Wife's share of the equity in this property, *this loan* shall not be deducted since it was already deducted from her interest in Husband's 401K Plan, as set forth below. Husband shall indemnify and hold Wife harmless as to any and all liability arising from *this home equity line*….

(*See* Adv. Pro., Docket No. 27-14, ¶19) (emphasis added). Debtor satisfied that home equity loan by paying it off with money acquired from the 2007 Transaction, a new loan. Greenwald and Debtor never amended the Settlement Agreement in writing to include the 2007 Transaction specifically or a refinancing generally. Likewise, the subsequent communications between their respective counsel, presented to this Court by Greenwald, do not reflect that the terms of the Settlement Agreement apply to the new loan. (*See* Docket No. 41 at 13-18). The language of the Settlement Agreement is clear and unambiguous. This Court declines to interpret the Settlement Agreement's references to the then-existing home equity loan as including the new home equity loan or anything else.

Greenwald's assertion that she consented to the 2007 Transaction only on the condition that Debtor would pay the new obligation from his share of the proceeds of the Property's sale is not only unsupported, but legally irrelevant. *See Halper v. Halper*, 164 F.3d 830, 842 (3d Cir. 1999) ("Under New Jersey law, however, [the party's] subjective intent is not legally relevant. The undisclosed subjective intent of a participant in a transaction cannot be used to alter the intent clearly manifested in the documents to which he subscribed.") (citing *Atl. N. Airlines v. Schwimmer*, 12 N.J. 293, 301 (N.J. 1953)). Therefore, the parties' dispute regarding the interpretation of paragraphs 18 and 19 of the Settlement Agreement are moot. To the extent it is not moot, Debtor complied with his obligation, and Greenwald must comply with hers.

Greenwald's insistence that she has not received the benefit of her bargain rings hollow. Indeed, she has lived in the Property for almost 14 years rent-free and mortgage-free. Those 14 years constitute a substantial value and could easily be worth significantly more than the $65,000 she gave up in the Settlement Agreement, although that is not an issue being decided by the Court. To Greenwald's benefit, the Settlement Agreement failed to place time restrictions on certain triggering events therein. Meanwhile, Debtor remained solely responsible for the then-existing home equity loan, which he satisfied through the 2007 Transaction. Contrary to Greenwald's suggestion, the Settlement Agreement does not dictate how Debtor had to satisfy the then-existing loan, except in two specific situations: (1) if Greenwald purchased Debtor's interest in the Property and the loan was still outstanding, or (2) if the Property was sold and the loan was still outstanding. (*See* Adv. Pro., Docket No. 27-14, ¶19). Neither situation occurred because Debtor satisfied the original home equity loan first.

No reason exists for this Court to rewrite the terms of the Settlement Agreement, which confirmed that Debtor had a 50% interest in the Property. The conclusion that Debtor held that interest as of the petition date is further bolstered by his transfer of the deed to Property to Greenwald post-petition and the Trustee's successful avoidance of that transfer. Upon Debtor's filing of his bankruptcy petition, that interest became part of the bankruptcy estate. *See* 11 U.S.C. § 541(a); *Becker*, 136 B.R. at 115.

Finally, Greenwald failed to provide an analysis of how constructive trust, section 544, and/or executory contract apply to the facts of this case. (*See* Adv. Pro., Docket No. 31 at 10-13). The Court thus rejects these arguments, which appear to be an attempt to throw in the proverbial "kitchen sink."

17

### 3. *The Trustee is Entitled to Summary Judgment on Her 11 U.S.C. § 363(h) Claim*

Based on the undisputed material facts, the Trustee has satisfied the requirements of section 363(h).  First, since Debtor held an undivided 50% interest in the Property as a joint tenant at the time of the commencement of his bankruptcy case, the Trustee now holds his interest in the Property, along with Greenwald.  Second, it is undisputed that partition of the Property, a single-family residential townhouse condominium, is impracticable.  Third, the sale of only the Trustee's undivided 50% interest in the Property subject to Greenwald's 50% interest would realize substantially less to the estate than the sale of the Property free of Greenwald's interest.  In contrast, sale of the Property free and clear will provide a significant benefit to the estate—and likely a significant distribution to unsecured creditors—that outweighs the detriment (if any) to Greenwald, who would also receive her share of the proceeds.  Fourth, it is undisputed that the Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.  Thus, the Trustee may sell the Property free of Greenwald's interest subject to this Court's approval of the sale.

As the Trustee acknowledges, perhaps Greenwald has rights and claims against Debtor.  This Court gives no opinion on that issue.  To the extent Greenwald wants to assert any claims, she should be guided by the Bankruptcy Code and its requirements.  But that is for another day, if at all.  What is clear now is that the Trustee holds Debtor's pre-petition 50% ownership interest in the Property and has shown she is entitled to sell the Property free of Greenwald's interest under section 363(h).

**CONCLUSION**

For the foregoing reasons, the Trustee's Motion for Summary Judgment is GRANTED. Greenwald's Motion for Summary Judgment is accordingly DENIED. An appropriate Order will enter.

Dated: July 20, 2017

*Stacey L. Meisel*
Honorable Stacey L. Meisel
United States Bankruptcy Judge